13-2355-cv
Sharpe v. City of New York, et al.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of March, two thousand fourteen.

PRESENT:  DENNY CHIN,
          CHRISTOPHER F. DRONEY,
                    Circuit Judges.[*]

- - - - - - - - - - - - - - - - - - - - - - - -x

WYNTON SHARPE,

                    Plaintiff-Appellant,

          -v-                                      13-2355-cv

CITY OF NEW YORK, THE OFFICE OF THE
DISTRICT ATTORNEY OF KINGS, AMY P.
FEINSTEIN, in her official and personal
capacity, CHARLES J. HYNES, in his
official and personal capacity, JAMES
LEEPER, in his official and personal
capacity,

                    Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:    STEPHEN BERGSTEIN, Bergstein &
                            Ullrich LLP, Chester, New York.

---

[*]    Because Judge Susan L. Carney, originally assigned to the panel, recused herself from this case, the remaining two judges issue this order in accordance with Second Circuit Internal Operating Procedure E(b).

FOR DEFENDANTS-APPELLEES:     LARRY A. SONNENSHEIN, Assistant
                              Corporation Counsel (Kathy H.
                              Chang, Assistant Corporation
                              Counsel, on the brief), for
                              Michael A. Cardozo, Corporation
                              Counsel of the City of New York,
                              New York, New York.

Appeal from the United States District Court for the Eastern District of New York (Cogan, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Wynton Sharpe appeals the district court's memorandum decision and order entered on May 29, 2013 granting defendants-appellees' motion under Federal Rule of Civil Procedure 12(b)(6). Judgment was entered that same day dismissing the amended complaint. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review the district court's grant of defendants' motion to dismiss on the pleadings de novo. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). We also accept the allegations in the amended complaint as true and draw all reasonable inferences in favor of Sharpe as the nonmoving party. Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012).

- 2 -

Sharpe has limited his appeal to a single claim: that defendants violated his right to intimate association by interfering with his relationship with his father. The right to intimate association "guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state." Sanitation & Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 996 (2d Cir. 1997). We have observed, however, that "[t]he source of the intimate association right has not been authoritatively determined." Adler v. Pataki, 185 F.3d 35, 42 (2d Cir. 1999). We have likewise noted that this Court and the Supreme Court have applied varying "standard[s] . . . in determining whether th[e] right has been violated." Id. at 43.

The district court acknowledged that we have not decided whether a plaintiff must allege that a state actor intended to interfere with an intimate association to state a claim. Sharpe v. City of New York, No. 11 Civ. 5494 (BMC), 2013 WL 2356063, at *8 (E.D.N.Y. May 29, 2013). The district court, however, observed that most circuit courts and district courts within the Second Circuit have found that intent to interfere is a necessary element in an intimate association claim. Id. The court concluded that Sharpe's claim must be dismissed because he failed plausibly to allege intent to interfere in his relationship with his father. Id.

- 3 -

We have previously recognized, however, that a plaintiff may state a claim for interference with an intimate association even though the complaint does not allege that the state either "purported to regulate" the relationship or "endeavored to end a . . . relationship already begun."  Adler, 185 F.3d at 44.  This case does not require us to decide whether we should limit the right to intimate association to circumstances where a state actor intended to interfere with the association.  Even if a plaintiff may establish a claim based on state action that imposes an "arbitrary" or "undue" burden on an intimate association, see id., Sharpe has failed to state such a claim here.

The amended complaint sets forth the following facts: (1) Sharpe's father, Wellington Sharpe, was running for public office, and had run on several occasions in the past, against Kevin Parker; (2) Parker was the subject of a criminal prosecution brought by the Red Zone General Trial Bureau of the Kings County District Attorney's Office (the "KCDAO"); (3) Wynton Sharpe was an Assistant District Attorney in the Red Zone General Trial Bureau of the KCDAO at the time of the Parker prosecution; (4) the KCDAO employee manual indicated that Assistant District Attorneys have a "duty to avoid both actual conflicts of interest and even the appearance of any improper political motive or bias in the conduct of any prosecution"; (5)

on August 11, 2010, Amy P. Feinstein, the Chief Assistant District Attorney in the KCDAO, and James Leeper, the Bureau Chief of the Red Zone, asked Sharpe whether his father was Wellington Sharpe; (6) as soon as he told Leeper and Feinstein that his father was Wellington Sharpe, Wynton Sharpe was suspended from the KCDAO, and was ultimately fired.

To "state[] a plausible claim for relief," a plaintiff must allege facts sufficient to support more than a "mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). We conclude that Sharpe's allegations fail to "nudge[]" Sharpe's claim "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 678, 570 (2007). Not once in his complaint does Sharpe contend that he ever disclosed his father's political candidacy to anyone in the KCDAO until he was specifically asked in August of 2010. Instead, he merely alleges that he "never kept his family relation with his father a secret," that "Defendant HYNES knew Wellington Sharpe had been a candidate for public office in KINGS COUNTY prior to the time of Plaintiff SHARPE's hiring," and that, "[u]pon information and belief," Sharpe's father's campaign against Parker "was a fact known to Defendant HYNES and other members of the KINGS COUNTY D.A.'S OFFICE."

These statements are "wholly conclusory," id. at 561, because they are unsupported by factual allegations about how or

- 5 -

why Hynes and other unidentified members of the KCDAO knew about the elder Sharpe's candidacy. At best, Sharpe's complaint simply alleges facts that are "consistent with" his theory that he was targeted for suspension and termination due to his relationship with his father, but are also consistent with a far more likely explanation: that he was suspended and terminated because the KCDAO believed that he violated its policy. See id. at 563. Although Sharpe asserts that he did not work on the Parker prosecution and was not "interested [in] or aware of any of the facts relating to the prosecution," he does not contend that he was unaware of the prosecution. Sharpe's mere employment in the unit that was engaged in a prosecution of Sharpe's father's political rival obviously posed a risk of creating "the appearance of . . . improper political motive or bias," yet Sharpe does not contend he did anything to mitigate this appearance.

Sharpe's amended complaint acknowledges that his failure to report his father's political candidacy to his supervisors or anyone else at the KCDAO had tangible consequences. The Assistant District Attorney in charge of the Parker prosecution was required to inform the judge presiding over the case and defense counsel about Sharpe's relationship, and Parker's defense attorney thereafter moved to dismiss the indictment and the judge relieved the KCDAO from the case.

Indeed, the court recognized the existence of a potential conflict.

Given his failure to allege facts to indicate that he took any steps to discharge his duty to avoid "the appearance of any improper political motive or bias," Sharpe's claim that he was targeted for adverse treatment because of his relationship with his father is not plausible.

We have considered Sharpe's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk