# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30195

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2020

Lyle W. Cayce
Clerk

In the Matter of: JOHN D. CHESTEEN, JR.

     Debtor

UNITED STATES OF AMERICA,

     Appellee

v.

JOHN D. CHESTEEN, JR.,

     Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-2077

Before OWEN, Chief Judge, and BARKSDALE and DUNCAN, Circuit Judges.

PER CURIAM:[*]

     At issue is whether the Patient Protection and Affordable Care Act's (ACA) shared-responsibility payment, as effective in 2016 (26 U.S.C. § 5000A(b) (2016)), is entitled to priority treatment in bankruptcy as an "excise

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 19-30195

tax on . . . a transaction", pursuant to 11 U.S.C. § 507(a)(8)(E)(i).  REVERSED; REMANDED.

### I.

The ACA requires most Americans to "ensure" they carry qualifying health insurance.  26 U.S.C. § 5000A(a) (2016).  This requirement is commonly known as the individual mandate.  Those subject to it, but who "fail to meet" it, were required, prior to the ACA's being amended in 2017, to make, through their income-tax returns, a shared-responsibility payment (SRP) to the Government, collected by the Internal Revenue Service.  *Id.* § 5000A(b).  The amount of this penalty was calculated based on a statutory formula.  *Id.* § 5000A(c).

In amending the ACA in 2017, Congress, *inter alia*:  retained the individual mandate; but set the SRP at $0 by changing the statutory formula.  Pub. L. No. 115-97, § 11081, 131 Stat. 2054, 2092 (2017).  Our court recently held this new provision "no longer" constitutionally justifiable under Congress' taxing power.  *Texas v. United States*, 945 F.3d 355, 390 (5th Cir. 2019), *petition for cert. filed sub nom. U.S. House of Representatives v. Texas*, 88 U.S.L.W. 3218 (U.S. 3 Jan. 2020) (No. 19-841).

Because our court's decision concerned the 2017 amendment's constitutional effect, however, it does not call into question the ACA's constitutionality before that amendment, which our court's opinion recognized was settled in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) (*NFIB*).  *See id.* at 372–73, 389–90.  Accordingly, our court's recent decision does not bear on the resolution of this appeal, involving the ACA as effective in 2016.

John D. Chesteen, Jr., concedes he was required to make a $695 SRP for tax year 2016 but failed to do so.  After this payment became due, Chesteen filed for Chapter 13 bankruptcy.  But, his proposed repayment plan—Chapter

No. 19-30195

13 debtors are required to submit such plans, 11 U.S.C. § 1321, for the bankruptcy court's confirmation, 11 U.S.C. § 1325—did not include the $695 SRP. The Government's subsequent proof of claim for unpaid taxes was amended to seek the SRP's inclusion in Chesteen's repayment plan, as a priority "excise tax on . . . a transaction" pursuant to 11 U.S.C. § 507(a)(8)(E)(i), which Chesteen would be required to repay in full, under 11 U.S.C. § 1322(a)(2).

Section 507(a)(8)(E)(i)—excise tax—is the only priority provision the Government advanced in bankruptcy court with respect to the SRP. Chesteen objected, claiming the SRP was a penalty, not a tax, and therefore not a debt for which the Bankruptcy Code required repayment. In any event, he also claimed: as used in the Bankruptcy Code, the SRP was not an "excise tax on a transaction".

Agreeing with Chesteen, the bankruptcy court concluded: the SRP's purpose was to deter citizens from living without health insurance, rendering the SRP a penalty, not a tax, for bankruptcy purposes; and, as such, the Government's claim for the SRP was not entitled to priority. *In re Chesteen*, No. 17–11472, 2018 WL 878847, at *3 (Bankr. E.D. La. 9 Feb. 2018), *rev'd sub nom. United States v. Chesteen*, No. 18–2077, 2019 WL 1499532, at *2–3 (E.D. La. 25 Feb. 2019). Accordingly, the bankruptcy court did not reach whether the SRP was entitled to priority as an "excise tax on a transaction". *See id.* at *1–3.

On appeal to the district court, the Government contended the SRP was an excise tax entitled to priority pursuant to § 507(a)(8)(E)(i). The district court agreed, concluding the SRP functions more like a tax than a penalty, based on the Supreme Court's having upheld, in *NFIB*, Congress' authority to impose the SRP pursuant to its taxing power. *Chesteen*, 2019 WL 1499532, at *2–3. It did not explain, however, why the Government was correct in

No. 19-30195

contending the SRP was an "excise tax on a transaction", as used in 11 U.S.C. § 507(a)(8)(E)(i). *See id.* (Nor did the court address *sua sponte* whether the SRP was a tax on income, entitled to priority under § 507(a)(8)(A).)

## II.

The decision of a district court, as an appellate court in a bankruptcy proceeding, is reviewed "by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court". *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003) (citation omitted). The "bankruptcy court's findings of fact are reviewed for clear error"; its "conclusions of law[,] . . . *de novo*". *Id.* (citation omitted). No facts are in dispute.

Chesteen claims: the SRP is a penalty, not a tax, for bankruptcy purposes; but, even if it is a tax, it is not one of the taxes to which the Bankruptcy Code grants priority. The Government counters: *NFIB*'s holding the SRP constitutionally permissible only under Congress' taxing power mandates it be considered a tax in bankruptcy; even if *NFIB* does not control, the SRP is a tax under bankruptcy precedent; and the SRP is entitled to priority under one of two Bankruptcy Code provisions—as an "excise tax on a transaction", § 507(a)(8)(E)(i), or as "a tax on or measured by income", § 507(a)(8)(A).

The parties dispute the extent to which *NFIB* controls the outcome in this appeal. As stated, the Government contends *NFIB* squarely governs. Chesteen, by contrast, asserts *NFIB* was, by its own terms, limited to the narrow question whether the SRP was reasonably construable as a constitutional exercise of Congress' taxing power. He claims the SRP's status under the Bankruptcy Code is a separate question of statutory interpretation, not determined by *NFIB*'s constitutional holding. Instead, he contends: the functional test described in *United States v. Reorganized CF & I Fabricators of*

4

*Utah, Inc.*, 518 U.S. 213, 224 (1996) (considering whether Congress intended exaction to "support[]" the Government or punish "an unlawful act" (citations omitted)) determines whether a statutory provision operates as a tax or penalty for bankruptcy purposes; and, under that test, the SRP is a penalty.

We, however, need not determine the extent to which *NFIB* controls or whether the SRP, as it existed in 2016, is a tax or penalty under the functional analysis used in bankruptcy cases. Even assuming *arguendo* the provision is a tax in bankruptcy—regardless of whether it is *NFIB* or the bankruptcy functional analysis that would dictate that outcome—the SRP, for the reasons that follow, is not entitled to priority under the one priority provision—"excise tax on . . . a transaction", pursuant to 11 U.S.C. § 507(a)(8)(E)(i)—properly at issue in our court.

For starters, "the Bankruptcy Code aims, in the main, to secure equal distribution among creditors". *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) (citations omitted). That said, the Bankruptcy Code grants certain claims priority treatment in distribution. 11 U.S.C. § 507(a). Because such priorities deviate from the "equal[-]distribution objective underlying the Bankruptcy Code", they "must be tightly construed". *Howard Delivery Serv.*, 547 U.S. at 667 (citations omitted). Along that line, the claim's holder—in this instance, the Government—bears the burden of establishing, by a preponderance of the evidence, that its claim satisfies one of the priorities. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

A claim's being entitled to priority has another consequence in a Chapter 13 proceeding, as in this instance: a debtor's repayment plan must provide for full payment of all priority claims, unless a claim's holder "agrees to a different treatment". 11 U.S.C. § 1322(a)(2).

The Bankruptcy Code affords eighth priority to specified "allowed unsecured claims of governmental units, only to the extent that such claims"

No. 19-30195

fall within an enumerated category of taxes.  *Id.* § 507(a)(8).  In this appeal, the Government, as the claim's holder, contends the owed SRP satisfies one of two subsections:  11 U.S.C. § 507(a)(8)(E)(i), "an excise tax on . . . a transaction"; and 11 U.S.C. § 507(a)(8)(A), "a tax on or measured by income".  As explained *infra*, the former fails, and the latter is not properly before our court.

A.

Regarding 11 U.S.C. § 507(a)(8)(E)(i), the excise-tax priority subsection the Government, at all stages of this action, has maintained applies to the owed SRP, assuming *arguendo* the SRP is a tax, Chesteen contends:  to constitute the requisite "excise tax on a transaction", an activity must be taxed; the SRP does not tax activity, but instead taxes inactivity; and, accordingly, the SRP is not entitled to priority under this provision.  We agree.

Section 507(a)(8)(E)(i) grants priority to "an excise tax *on . . . a transaction* occurring before the date of the filing of the [bankruptcy] petition for which a [tax] return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition".  11 U.S.C. § 507(a)(8)(E)(i) (emphasis added).  (Chesteen does not dispute that the $695 SRP at issue in this instance satisfies the three-year timing requirement.)  "Because the term 'excise tax' is not defined in the Bankruptcy Code, courts determining its meaning have typically resorted to dictionary definitions." *Rizzo v. Mich. Dep't of Treasury (In re Rizzo)*, 741 F.3d 703, 706 (6th Cir. 2014) (citing *Cal. Self-Insurers' Sec. Fund v. Lorber Indus. of Cal. (In re Lorber Indus. of Cal.)*, 564 F.3d 1098, 1101 (9th Cir. 2009); *Bos. Reg'l Med. Ctr., Inc. v. Mass. Div. of Health Care Fin. & Policy (In re Bos. Reg'l Med. Ctr., Inc.)*, 365 F.3d 51, 57 (1st Cir. 2004)).

The "consensus" definition is that "'excise tax' as used in § 507(a)(8)(E) generally refers to '[a] tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax

6

No. 19-30195

or an attorney occupation fee)'". *In re Rizzo*, 741 F.3d at 706 (quoting Black's Law Dictionary 646 (9th ed. 2009)) (citing *In re Bos. Reg'l Med. Ctr.*, 365 F.3d at 65; *George v. Uninsured Emp'rs Fund (In re George)*, 361 F.3d 1157, 1163 (9th Cir. 2004); *DeRoche v. Ariz. Indus. Comm'n (In re DeRoche)*, 287 F.3d 751, 755 (9th Cir. 2002); *Groetken v. Ill. Dep't of Revenue (In re Groetken)*, 843 F.2d 1007, 1013 (7th Cir. 1988)); *see also, e.g.*, *Excise Tax*, Webster's New International Dictionary, Unabridged (3d ed. 1986) (Webster's) (defining "excise tax" as tax on, *inter alia*: "manufacture, sale, or consumption"; "producers of excisable commodities"; and "privileges (as of engaging in a particular trade or sport, transferring property, or engaging in business in a corporate capacity) that are often assessed in the form of a license or other fee"). An excise tax "[t]ypically" requires "a discrete act by the person or entity being taxed". *In re Rizzo*, 741 F.3d at 706 (citation omitted). Other definitions operate somewhat more "broad[ly]", though, and include taxes "imposed upon a particular use of property or upon the exercise of a right or privilege". *Id.* (citations and internal quotation marks omitted).

However broadly stated, these definitions all share a common nucleus: an excise tax is imposed on some type of activity, such as "manufacture", "produc[tion]", "engaging", "transferring", "us[ing]", or "exercis[ing]". *See id.* (quoting Black's Law Dictionary 646 (9th ed. 2009)); *Excise Tax*, Webster's. This is in harmony with the remainder of the provision, which, as emphasized *supra*, requires the excise tax be "on . . . a transaction" occurring within the three-year window. 11 U.S.C. § 507(a)(8)(E)(i).

The SRP is, therefore, not an "excise tax" as used in § 507(a)(8)(E)(i). As effective in 2016, the SRP was imposed when taxpayers to whom it applied "fail[ed] to meet" the individual-mandate requirement for at least one month. 26 U.S.C. § 5000A(b)(1) (2016). The individual-mandate provision requires: "An applicable individual shall for each month beginning after 2013 ensure

7

that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month." *Id.* § 5000A(a). "The individual mandate . . . does not regulate existing commercial activity. It instead compels individuals to *become* active in commerce by purchasing [health insurance] . . .". *NFIB*, 567 U.S. at 552 (opinion of Roberts, C.J.) (emphasis in original). Accordingly, the SRP concerns a person's inactivity in not procuring the requisite insurance. *See* 26 U.S.C. § 5000A(b)(1) (2016); *NFIB*, 567 U.S. at 556 (opinion of Roberts, C.J.) ("If the individual mandate is targeted at a class, it is a class whose commercial inactivity rather than activity is its defining feature."). This is the opposite of the activity required for a tax to constitute an "excise tax" pursuant to § 507(a)(8)(E)(i).

The Government does not dispute that some type of activity is required; it instead insists the relevant activity is the "taxpayer's exercise of his or her right to choose not to purchase health insurance". But, even assuming *arguendo* that Chesteen made that choice (a proposition for which there is no record evidence), such failure to act would not have been activity but inactivity. *See NFIB*, 567 U.S. at 551–56 (opinion of Roberts, C.J.) (distinguishing between activity and inactivity); *id.* at 658 (Scalia, Kennedy, Thomas, & Alito, JJ., dissenting) ("Ultimately [Justice Ginsburg's separate opinion concurring in part and dissenting in part] is driven to saying that there is really no difference between action and inaction, . . . a proposition that has never recommended itself, neither to the law nor to common sense." (internal citation omitted)).

The Government points to several out-of-circuit decisions that it claims applied § 507(a)(8)(E)(i) to taxes on inactivity; but, these are inapposite because all involved activities that were taxed. *In re DeRoche* held a tax on "the act of employing a worker without carrying the required [workers'

No. 19-30195

compensation] insurance when the worker [was] injured" satisfied § 507(a)(8)(E); the relevant activity was the employer's employing the worker. *In re DeRoche*, 287 F.3d at 757. *Williams v. Motley* held a charge assessed on a motorist's registering his vehicle without insurance also sufficed; the activity was his registering the vehicle. *See Williams v. Motley*, 925 F.2d 741, 743–45 (4th Cir. 1991). And, *In re Groetken* considered whether a provision was better "viewed as a sales tax or a tax on the occupation of retailing"; both clearly require activity. *See In re Groetken*, 843 F.2d at 1014.

To be analogous to these cases, the SRP would have to be imposed only upon a person's activity of, *e.g.*, utilizing health-care services while lacking qualifying health insurance. But, as stated, the SRP applies even when a person engages in no activity. *See* 26 U.S.C. § 5000A(b) (2016).

### B.

As discussed, the Government, in both the bankruptcy and district courts, relied solely on § 507(a)(8)(E)(i) ("excise tax on . . . a transaction"). It now asserts, for the first time and in the alternative, that another subsection, § 507(a)(8)(A) (granting priority to "a tax on or measured by income"), applies. We decline to consider this waived claim.

It hardly needs citation that our court's general rule is that issues not preserved in district court (or, as relevant in this instance, bankruptcy court) are waived and, accordingly, are not considered on appeal. *E.g.*, *New Orleans Depot Servs., Inc. v. Dir., Office of Workers' Comp. Programs*, 718 F.3d 384, 387 (5th Cir. 2013) (en banc) (citation omitted). Our court has, nonetheless, recognized a "*discretionary* exception to [this] rule where a disputed issue concerns a pure question of law", *id.* at 388 (emphasis added) (citations and internal quotation marks omitted), that all parties have had an opportunity to brief, *Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 276 (5th Cir. 2015) (citation omitted).

No. 19-30195

In this instance, although the Government failed to raise, in both the bankruptcy and district courts, whether the SRP is entitled to priority pursuant to 11 U.S.C. § 507(a)(8)(A), as "a tax on or measured by income", it nonetheless urges our considering the issue, but for two shifting reasons for the issue's not being waived.

First, its brief claimed we should do so on the basis that a judgment may be affirmed on any ground supported by the record, citing *DeMarco v. Davis*, 914 F.3d 383, 388 n.6 (5th Cir. 2019). Our court will not generally, however, affirm a judgment simply because a ground is supported by the record, unless that ground was also raised in district court (and, in this instance, the bankruptcy court). *See, e.g.*, *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009) (citation omitted) (stating ground must have been raised and be supported by record to affirm summary judgment); *McIntosh v. Partridge*, 540 F.3d 315, 326–27 (5th Cir. 2008) ("While [w]e may affirm a summary judgment on any ground supported by the record, this principle does not of itself generally justify affirmance on a ground not raised below." (alteration in original) (citation and internal quotation marks omitted)); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citations omitted) (stating ground must have been raised and be supported by record to affirm Rule 12(b)(6) dismissal); *FDIC v. Lee*, 130 F.3d 1139, 1141–42 (5th Cir. 1997) (discussing "general rule counseling against our considering new grounds on appeal that were not raised or considered by the district court"; but noting "general rule need not always apply if the circumstances warrant to the contrary", and affirming based on ground not raised in district court (citing *FDIC v. Laguarta*, 939 F.2d 1231, 1240 (5th Cir. 1991))); *Laguarta*, 939 F.2d at 1240 (holding court "will generally not consider . . . new grounds raised by an appellee in defense of summary judgment" (citation omitted)).

10

No. 19-30195

We apply the general rule in this instance because:  Chesteen was not afforded the opportunity in bankruptcy court to develop and contest the tax-on-income ground the Government now asserts is a ground for our affirming; that ground was not implicit in the excise-tax-on-a-transaction ground the Government raised as its claim's basis; and the record was not otherwise adequately developed because, as discussed *infra*, the bankruptcy court was denied the opportunity to rule on the tax-on-income ground.  *See Laguarta*, 939 F.3d at 1240.  Under the Government's approach, the exception would swallow the rule requiring issues to be preserved.  *See id.*

For the second reason advanced for avoiding waiver, only at oral argument in our court did the Government belatedly invoke the above-discussed discretionary waiver exception for a pure legal issue that all parties have had an opportunity to brief.  (Chesteen, by contrast, requests our court disregard this new claim.)　 Because this second reason is so extremely untimely, it has an even weaker justification in this instance than the first urged for an exception.  For obvious reasons, we generally do not consider points presented for the first time at oral argument.  *E.g.*, *Zuccarello v. Exxon Corp.*, 756 F.2d 402, 407–08 (5th Cir. 1985).

In any event, for this discretionary exception, we decline to consider this waived claim.  Needless to say, bankruptcy judges possess considerable expertise in the Bankruptcy Code.  By failing to present this claim to the bankruptcy court, the Government not only deprived that court of the opportunity to rule on the issue but also deprived both the district court and our court of the bankruptcy court's knowledge and experience in applying the Bankruptcy Code.　 Because § 507(a)(8) concerns taxes, moreover, the Government is a repeat litigant on this issue, making its failure to present these claims in bankruptcy and district courts even less sympathetic.  And, of course, our declining in this instance to consider this waived issue does not

11

No. 19-30195

prevent the Government's raising it—properly—in an appropriate future action.

## C.

In another new, and therefore waived, claim, the Government attempts to maneuver the SRP into § 507(a)(8) (subsection enumerating the taxes entitled to priority), contending:  the Constitution permits only four types of taxes (direct taxes, income taxes, excise taxes, and duties); the SRP is clearly not a duty or a direct tax; it must, therefore, be either an excise or income tax, both of which § 507(a)(8) entitles to priority.  *See In re Cousins*, 601 B.R. 609, 619–21 (Bankr. E.D. La. 2019) (citing U.S. Const. art. I, § 8, cl. 1; *id.* art. I, § 9, cl. 4; *id.* amend. XVI) (concluding that "by the process of elimination, the SRP is either an excise or an income tax [under the Constitution], each of which affords it priority status [under the Bankruptcy Code]").  For the reasons stated *supra*, we also decline to consider this waived claim.

## III.

For the foregoing reasons, the judgment of the district court is REVERSED.  This action is REMANDED to district court, with instructions to remand to bankruptcy court for entry of a revised judgment or, consistent with this opinion, for such other proceedings as may be appropriate.

12