20-1981-bk
In re Hilal K. Homaidan

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2020
No. 20-1981


HILAL K. HOMAIDAN,
Plaintiff-Appellee,


v.


SALLIE MAE, INC., NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE
CORPORATION,
Defendants-Appellants.[1]


ARGUED: MAY 19, 2021
DECIDED: JULY 15, 2021


Before:     JACOBS, CHIN, NARDINI, Circuit Judges.

---

[1] The Clerk of Court is directed to amend the caption as set forth above.
Reeham Youssef was added as a plaintiff in the proceeding below and appellants
named her as an appellee here.   However, Youssef was not a party to this case
when the bankruptcy court entered the order on appeal.   Therefore, she is not a
proper party to this appeal and is removed from the caption.

1

In the United States Bankruptcy Court for the Eastern District of New York (Stong, B.J.), the borrower argued that a student loan was discharged in bankruptcy. The bankruptcy court denied the lender's motion to dismiss after concluding that 11 U.S.C. § 523(a)(8)(A)(ii)—which excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship, or stipend"—does not cover private student loans. We **AFFIRM**.

_____

GEORGE F. CARPINELLO, Boies Schiller Flexner LLP, Albany, NY (Adam R. Shaw, Robert C. Tietjen, Jenna C. Smith, on the brief), for Plaintiff-Appellee.

Austin C. Smith, Smith Law Group, New York, NY (on the brief), for Plaintiff-Appellee.

Lynn E. Swanson, Peter Freiberg, Jones, Swanson, Huddell & Garrison, L.L.C., New Orleans, LA (on the brief), for Plaintiff-Appellee.

Jason W. Burge, Fishman Haygood L.L.P., New Orleans, LA (on the brief), for Plaintiff-Appellee.

THOMAS M. FARRELL, McGuire Woods LLP, Houston, TX (K. Elizabeth Sieg, McGuire Woods LLP, Richmond, VA, on the brief), for Defendants-Appellants.

DENNIS JACOBS, Circuit Judge:

The Bankruptcy Code immunizes certain liabilities from discharge, including much educational debt. See 11 U.S.C. § 523(a)(8). The question in this case is whether the private educational loans that Plaintiff-Appellee Hilal K. Homaidan took out from Defendant-Appellants Sallie Mae Inc., Navient Solutions, LLC, and Navient Credit Finance Corporation (collectively, "Navient") were dischargeable.

Homaidan received the loans (the "Navient loans"), graduated from Emerson College, and later filed for Chapter 7 bankruptcy. The bankruptcy court's 2009 discharge order was ambiguous as to whether the Navient loans were discharged. Navient pursued repayment after the discharge order was issued, and Homaidan complied. After paying off the loans in full, Homaidan reopened the bankruptcy case and commenced this adversary proceeding against Navient seeking, among other things, actual damages for Navient's alleged violation of the discharge order. The United States Bankruptcy Court for the Eastern District of New York (Stong, B.J.) determined that the Navient loans were not excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(ii) and

3

therefore denied Navient's motion to dismiss.   See Homaidan v. SLM Corp. (In re Homaidan), 596 B.R. 86, 107 (Bankr. E.D.N.Y. 2019).

Navient maintains that § 523(a)(8)(A)(ii) prevented the loans from being discharged in Homaidan's bankruptcy.   That provision excepts from discharge "obligation[s] to repay funds received as an educational benefit, scholarship, or stipend."   11 U.S.C. § 523(a)(8)(A)(ii).   Under Navient's reading of that provision, the term "educational benefit" would encompass virtually all private student loans.   But that reading cannot be reconciled with the text and structure of § 523(a)(8), both of which confirm that § 523(a)(8)(A)(ii) excepts from discharge a far narrower category of debt.

Accordingly, we **AFFIRM** the bankruptcy court's denial of Navient's motion to dismiss.

**I**

Homaidan attended Emerson College from 2003-2007 and took out several loans to finance his education there.   Among them were two direct-to-consumer Tuition Answer Loans, totaling $12,567, from Sallie Mae Inc., a corporation to which Navient is the successor.   Although the loans helped underwrite

4

Homaidan's college education, they were not made through Emerson's financial aid office, nor—Homaidan alleges—were they made solely to cover Emerson's cost of attendance. They went straight to Homaidan's bank account, and the loan proceeds exceeded the cost of Emerson's tuition.

Soon after graduating, Homaidan filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of New York. The petition listed the Navient loans as liabilities. Homaidan eventually obtained a discharge order from the bankruptcy court, but the order did not specify which debts were discharged. Rather, it observed that some "common types of debts" including "[d]ebts for most student loans," are not dischargeable in a Chapter 7 proceeding. App'x 59 (alterations omitted).

After the bankruptcy proceeding was closed, Navient hired a collection firm to pester Homaidan about paying back his Tuition Answer Loans. These demands for repayment caused Homaidan to assume that the loans had not been discharged; so he paid Navient in full, allegedly "under the mistaken belief that he had a legal obligation to do so." App'x at 26 (Compl. ¶ 51).

In 2017, Homaidan moved to reopen his bankruptcy case to seek a

determination that the Navient loans were in fact discharged during the original proceeding. (This would allow him to sue Navient for violating the discharge order.) Once the case was reopened, Homaidan commenced the instant adversary proceeding against Navient, which is styled as a putative class action. According to Homaidan, Navient has employed a scheme of issuing dischargeable loans to unsophisticated student borrowers and then demanding repayment even after those loans are discharged in bankruptcy.

Navient moved to dismiss the adversary proceeding under Federal Rule of Civil Procedure 12(b)(6), arguing, inter alia, that Homaidan's Tuition Answer Loans were excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(ii). The bankruptcy court rejected that argument, concluding that "both by its terms and read in context, [§ 523(a)(8)(A)(ii)] does not sweep in all education-related debt." In re Homaidan, 596 B.R. at 102. The district court (Block, J.) then certified the bankruptcy court's order for interlocutory appeal.

## II

We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 158(d)(2)(A). That provision gives us jurisdiction to review an interlocutory

6

order from a bankruptcy court if: (1) the district court certifies (<u>inter alia</u>) that the order involves a question of law for which no controlling precedent exists; and (2) this Court authorizes the appeal.   <u>See</u> 28 U.S.C. § 158(d)(2)(A); <u>Weber v. United States</u>, 484 F.3d 154, 157 (2d Cir. 2007).   The district court so certified, and a motions panel of this Court authorized the appeal.

Our review of the bankruptcy court's order, which involves a pure question of law, is <u>de novo</u>.   <u>See</u> <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 300 (2d Cir. 2003).

### III

The sole question is one of statutory interpretation: whether the loans at issue constitute "an obligation to repay funds received as an educational benefit" and were therefore excepted from discharge under § 523(a)(8)(A)(ii).   Homaidan contends that Navient is estopped from advancing its interpretation of § 523(a)(8)(A)(ii).   But we reach it for the reasons set forth in the margin,[2] and

[2] Homaidan argues that Navient is estopped because it has unsuccessfully advanced its interpretation of § 523(a)(8)(A)(ii) in other cases.   Appellee Br. at 11–15 (citing <u>Crocker v. Navient Sols. LLC (In re Crocker)</u>, 941 F.3d 206 (5th Cir. 2019), and <u>McDaniel v. Navient Sols. LLC (In re McDaniel)</u>, 973 F.3d 1083 (10th Cir. 2020)).   We disagree.   Nonmutual offensive collateral estoppel, which

7

conclude that Homaidan's loans fall outside the scope of § 523(a)(8)(A)(ii).

Our inquiry begins (and in this case ends) with the statutory text. See Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003). The Bankruptcy Code lays out several categories of educational debt that cannot be discharged in bankruptcy absent a showing of undue hardship. See 11 U.S.C. § 523(a)(8). Because the federal bankruptcy system is designed to "aid the unfortunate debtor by giving him a fresh start in life," Lamar, Archer & Cofrin, LLP v. Appling, 138 S. Ct. 1752, 1758 (2018) (internal quotation marks omitted), discharge exceptions such as § 523(a)(8) are "confined to those plainly expressed in the Bankruptcy Code," Bethpage Fed. Credit Union v. Furio (In re Furio), 77

---

"precludes a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff," Bifolck v. Philip Morris USA Inc., 936 F.3d 74, 79 (2d Cir. 2019) (internal quotation marks and alteration omitted), cannot be applied if it would be unfair to the defendant, see Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 330 (1979). Unfairness arises "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." Id. Because the Fifth and Tenth Circuit cases relied upon by Homaidan are inconsistent with earlier cases that adopted Navient's broader reading of § 523(a)(8)(A)(ii), see, e.g., Roy v. Sallie Mae (In re Roy), 2010 WL 1523996, at *1 (Bankr. D.N.J. Apr. 15, 2010), it would be unfair to preclude Navient from advancing its view here, see Flood v. Just Energy Mktg. Corp., 904 F.3d 219, 237 (2d Cir. 2018) (affirming denial of collateral estoppel when the defendant had previously prevailed in another district court).

F.3d 622, 624 (2d Cir. 1996) (internal quotation marks and alteration omitted).

The creditor bears the burden of establishing that a debt is excepted from

discharge.   Cazenovia Coll. v. Renshaw (In re Renshaw), 222 F.3d 82, 90 (2d Cir.

2000).

> Section 523(a)(8) excepts from discharge:
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8).   This dense language means that three categories of

educational debt cannot be discharged in bankruptcy: (1) loans and benefit

overpayments backed by the government or a nonprofit; (2) obligations to repay

funds received as an educational benefit, scholarship, or stipend; and

(3) qualified private educational loans.[3]

---

[3] For a loan to be "qualified" under § 523(a)(8)(B), the student must attend an

Navient does not argue (in this appeal, at least) that the loan it made to Homaidan falls into either the first or third categories. Nor does Navient argue the loan constitutes a "scholarship" or "stipend." Therefore, the only question remaining is whether Navient's loan is "an obligation to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii).

Navient argues that its loan agreement constitutes an "obligation to repay funds" and that Homaidan obtained those funds for the purpose of advancing his education, thereby deriving from them an "educational benefit." Navient endeavors to bolster this textual argument by pointing to a line of cases holding (without much textual analysis) that a private loan is covered by § 523(a)(8)(A)(ii) if the debtor obtained the funds to pay for educational expenses. See, e.g., Benson v. Corbin (In re Corbin), 506 B.R. 287, 296–97 (Bankr. W.D. Wash. 2014). Finally, Navient relies on a summary order of this Court, which is by definition non-precedential, and in any event, beside the point.[4]

_____

eligible educational institution and the loan must fund only qualified higher education expenses. See 26 U.S.C. § 25A(f)(2); id. § 221(d).

[4] In Desormes v. U.S. Tr. (In re Desormes), a pro se debtor sought to discharge in

10

According to Homaidan (and the other two circuit courts that have addressed the question), § 523(a)(8)(A)(ii) excepts from discharge only a narrow category of conditional grant payments, not all private student loans.

**A**

Navient's interpretation violates several rules of statutory construction. First, it is unsupported by plain meaning. Navient argues that the ordinary public meaning of "an obligation to repay funds received as an educational benefit" includes student loans. But as the bankruptcy court explained, that would be "an unconventional way to discuss a loan." In re Homaidan, 596 B.R. at 102. The Tenth Circuit, less charitable, observed that "no normal speaker of English . . . would say that student loans are obligations to repay funds received

_____

bankruptcy a private loan he took out to attend a for-profit law school. See 569 F. App'x 42, 43 (2d Cir. 2014). The bankruptcy court's refusal to discharge the loan under § 523(a)(8)(A)(ii) was affirmed, but the (non-binding) order did not squarely take on the statutory interpretation question at the center of this appeal. The debtor's primary contention was that his loan fell outside of § 523(a)(8)(A)(ii)'s scope because he did not receive funds directly. The panel's single sentence of analysis rejects *that* argument. See id. And while the debtor's briefing did raise an argument about the scope of § 523(a)(8)(A)(ii), the panel did not engage with it.

11

as an educational benefit." In re McDaniel, 973 F.3d at 1096 (internal quotation

marks omitted). We agree: if Congress had intended to except all educational

loans from discharge under § 523(a)(8)(A)(ii), it would not have done so in such

stilted terms. As discussed infra, there are educational benefits that students

may become obligated to repay—such as conditional grants—which fit the

statutory text more naturally.

Next, Navient attempts to read "loan" into § 523(a)(8)(A)(ii); but the word

is absent from that provision, which itself is sandwiched in between two others

that use the word "loan" expressly.[5] When interpreting a disputed statutory

term, "we must not look merely to [the] particular clause, but consider [it] in

connection with it the whole statute." Dada v. Mukasey, 554 U.S. 1, 16 (2008)

(internal quotation marks omitted). So when Congress "includes particular

language in one section of a statute but omits it in another section of the same

Act, it is generally presumed that Congress acts intentionally and purposely in

---

[5] The preceding subsection, § 523(a)(8)(A)(i), excepts from discharge a "loan
made . . . by a governmental unit or nonprofit institution." And the following
subsection, § 523(a)(8)(B), likewise excepts "any other educational loan that is a
qualified education loan."

12

the disparate inclusion or exclusion."   <u>Russello v. United States</u>, 464 U.S. 16, 23

(1983) (internal quotation marks omitted).

Navient offers no compelling rejoinder to this argument, but instead

proffers two structural arguments of its own.   Neither is persuasive.   First,

Navient argues that § 523(a)(8)(A)(ii) must encompass student loans because

§ 523(a)(8)(B) refers to "any *other* educational loan," thus implying that the

preceding subsections likewise cover loans.   Appellant Br. at 22.   But

§ 523(a)(8)(A)(i) expressly excepts from discharge "*loan[s]*" that are backed by the

government or a nonprofit.   The natural reading of "other" in § 523(a)(8)(B) is

that it refers back to § 523(a)(8)(A)(i), not § 523(a)(8)(A)(ii).

Second, Navient points us to other statutes in which Congress has used the

term "obligation to repay" in reference to loans.   Appellant Br. at 21–22 (citing,

<u>inter alia</u>, 12 U.S.C. § 1430(d)).   That observation has little bearing on our

analysis, which principally concerns § 523(a)(8).   The question is not whether

the phrase "obligation to repay" can *ever* be used to describe a loan, or even

whether it can be an apt description.   Rather, we must determine what Congress

meant when it used that term in § 523(a)(8).   Congress used the word "loan"

13

several times in § 523(a)(8) but left it out of § 523(a)(8)(A)(ii), signaling that the omission was intentional.   See Russello, 464 U.S. at 23.

**B**

Navient's construction also offends the canon against surplusage, which advises courts to interpret a statute to effectuate all its provisions, "so that no part will be inoperative or superfluous."   Hibbs v. Winn, 542 U.S. 88, 101 (2004). The canon is at its "strongest when an interpretation would render superfluous another part of the same statutory scheme."   Marx v. Gen. Revenue Corp., 568 U.S. 371, 386 (2013).

Navient's broad reading—under which *any* loan is nondischargeable under § 523(a)(8)(A)(ii) if it was used to further one's education—would draw virtually all student loans within the scope of § 523(a)(8)(A)(ii).   That construction proves too much.   If it were adopted, the other subsections of § 523(a)(8)—both of which delineate specific categories of nondischargeable educational debt—would be swallowed up.[6]   Loans excepted from discharge

---

[6] Navient maintains that its interpretation leaves a role for § 523(a)(8)(B) to play. Appellant Br. at 30 (citing Wills v. Sallie Mae Servicing (In re Wills), 2010 WL 1688221, (S.D. Ind. Apr. 23, 2010)).   In Wills, the debtor took out a loan to

14

under § 523(a)(8)(A)(i) and § 523(a)(8)(B) "would be no more than a subset of such loans already excepted from discharge under § 523(a)(8)(A)(ii)." <u>See</u> <u>Nunez v. Key Educ. Res. (In re Nunez)</u>, 527 B.R. 410, 415 (Bankr. D. Or. 2015). We presume that by constructing a statute with three distinct subsections, "Congress intended each [one] to have a distinct function and to target different kinds of debt[]." <u>Inst. of Imaginal Stud. v. Christoff (In re Christoff)</u>, 527 B.R. 624, 634 (9th Cir. BAP 2015).

The evolution of § 523(a)(8) confirms that it is not a catch-all for educational loans. The term disputed in this case—"obligation to repay funds received as an educational benefit"—was first added to § 523(a)(8) in 1990. From 1990 to 2005, § 523(a)(8) was a single paragraph that excepted from discharge a debt:

---

finance his grandson's education. 2010 WL 1688221, at *1. Navient says that because the *grandfather* did not receive an "educational benefit" from the loan, it would not be excepted from discharge under § 523(a)(8)(A)(ii) but still be covered under § 523(a)(8)(B). But this contradicts Navient's assertion that what matters for § 523(a)(8)(A)(ii) is "the purpose of [the] loan." Appellant Br. at 7. Under Navient's purpose-focused test, the loan in <u>Wills</u> would appear to still be covered by § 523(a)(8)(A)(ii). And even if Navient could posit a set of facts under which a loan would escape § 523(a)(8)(A)(ii)'s reach, it cannot persuasively dispute that its broad interpretation causes considerable overlap.

15

for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend.

The Federal Debt Collection Act of 1990, Pub. L. No. 101-647, § 3621(1), 104 Stat. 4933, 4964–65 (1990).   The statute took its current, three-subsection form in 2005 when Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").

Navient argues that by setting § 523(a)(8)(A)(ii) off in a separate subsection, Congress intended to except from discharge all private student loans. This assertion puts more weight on the BAPCPA amendment than it can bear. The Act did not alter the substance of the phrase at issue; it inserted a comma after "scholarship," and merely tweaked the statute's format by splitting it into two subsections, now § 523(a)(8)(A)(i) and § 523(a)(8)(A)(ii).   And Navient conceded that before the BAPCPA, "the near-unanimity of courts" interpreted § 523(a)(8)'s language as *not* excepting private student loans from discharge. See In re Crocker, 941 F.3d at 222; Dufrane v. Navient Sols., Inc. (In re Dufrane), 566 B.R. 28, 37 (Bankr. C.D. Cal. 2017) ("In a series of cases following the 1990

16

amendment, bankruptcy courts uniformly rejected the notion that the new term 'educational benefit' could be read . . . to except from discharge loans made by for-profit lenders . . . .").   It would be quite strange for Congress to render nondischargeable a huge new category of debt by tinkering with § 523(a)(8)'s format but leaving untouched (but for an Oxford comma) wording that had never been interpreted to except private loans from discharge.

The BAPCPA's far more significant modification was the addition of § 523(a)(8)(B).   That new subsection, which excepts a subset of private loans from discharge, was a "response to the growing trend of commercial lending" and was designed to "make qualified private student loans harder to discharge." Thomas v. Dep't of Educ. (In re Thomas), 931 F.3d 449, 453 (5th Cir. 2019).   But under Navient's interpretation, private student loans were *already* excepted from discharge as "obligation[s] to repay funds received as an educational benefit." 11 U.S.C. § 523(a)(8)(A)(ii).   "It defies logic to suggest that Congress added subsection 523(a)(8)(B) in 2005 to encompass a subset of loans already covered under subsection 523(a)(8)(A)(ii)."   Decena v. Citizens Bank (In re Decena), 549 B.R. 11, 19 (Bankr. E.D.N.Y. 2016), rev'd on other grounds, 562 B.R. 202 (E.D.N.Y.

17

2016).

While Navient's broader reading of § 523(a)(8)(A)(ii) largely obviates its neighboring subsections, Homaidan's narrower interpretation reserves a role for each one: § 523(a)(8)(A)(i) covers government and nonprofit-backed loans and educational benefit overpayments[7]; § 523(a)(8)(A)(ii) covers scholarships, stipends, and conditional education grants; and § 523(a)(8)(B) covers private loans made to individuals attending eligible schools for certain qualified expenses.

## C

Navient's interpretation also clashes with noscitur a sociis, the canon that "counsels that a word is given more precise content by the neighboring words with which it is associated."[8]   Freeman v. Quicken Loans, Inc., 566 U.S. 624, 634–

---

[7] An educational benefit overpayment occurs, for example, when a GI Bill recipient continues to receive payments even after leaving school.   See In re Renshaw, 222 F.3d at 92.

[8] Navient suggests that relying on noscitur is inappropriate when, as here, a statutory list contains just three items.   See Appellant Br. at 36 (citing Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280, 288 (2010)).   But Graham involved three listed items that were "each quite distinct from the other no matter how construed."   559 U.S. at 288.   That is not the case

35 (2012) (internal quotation marks omitted); see also United States v. Dauray, 215 F.3d 257, 262 (2d Cir. 2000) ("[T]he meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases."). Employing noscitur a sociis helps prevent a court from "ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." Yates v. United States, 574 U.S. 528, 543 (2015) (internal quotation marks omitted).

In this case, the disputed term—"educational benefit"—is undefined and potentially ambiguous. Noscitur therefore instructs us to cabin it such that its scope aligns with that of its listed companions—"scholarship" and "stipend." See T.W. v. N.Y. State Bd. of L. Examiners, 996 F.3d 87, 98 (2d Cir. 2021) (relying on noscitur to avoid an interpretation that would "define the word much more broadly than its statutory neighbors"). Both "scholarship" and "stipend" describe conditional grant payments "which are not generally required to be repaid by the recipient." Campbell v. Citibank, N.A. (In re Campbell), 547 B.R.

---

here. Moreover, post-Graham, the Supreme Court has utilized noscitur when interpreting a term in a list of three items. See Yates v. United States, 574 U.S. 528, 544–45 (2015).

19

49, 55 (Bankr. E.D.N.Y. 2016). For example, a "scholarship" for a student-athlete need not be repaid if the recipient remains on the team; similarly, a "stipend" is a payment that is conditioned on the recipient's performance of services and generally need not be repaid. The defining characteristic of a loan, by contrast, is an unconditional obligation to pay it back. Interpreting "educational benefit" to cover all private student loans when the two terms listed in tandem describe "specific and quite limited kinds of payments that . . . do not usually require repayment," In re Crocker, 941 F.3d at 220, would improperly broaden § 523(a)(8)(A)(ii)'s scope.

"Educational benefit" is therefore best read to refer to conditional grant payments similar to scholarships and stipends. The Reserve Officer Training Corps and the National Health Service Corps, for example, pay tuition in exchange for a promise to serve in the military after graduation or to practice medicine in an underserved region. See Jason Iuliano, Student Loan Bankruptcy and the Meaning of Educational Benefit, 93 AM. BANKR. L.J. 277, 292 (2019). A recipient who breaks that promise incurs an "obligation to repay [the] funds" that they previously received "as an educational benefit." Per

20

§ 523(a)(8)(A)(ii), that obligation cannot be discharged in bankruptcy.

## CONCLUSION

For the reasons stated above, the district court's order denying Navient's motion to dismiss is **AFFIRMED.**